IN THE MATTER OF LOCKSLEY H. BRYAN.

Suffolk. October 8, 1991. - December 4, 1991.

Present: LIACOS, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Attorney at Law*, Disciplinary proceeding, Commingling of funds, Disbarment.

An attorney's repetitive wrongdoing, involving more than twelve clients; his conversion of clients' funds; his loss of funds of one client; his continued wrongdoing even after disciplinary proceedings had commenced; and the absence of any substantial mitigating factor, collectively, supported a judgment ordering the attorney's disbarment. [291-292]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on May 10, 1991.

The case was reported by *Greaney*, J.

*Roger Geller*, Assistant Bar Counsel.

*Willie J. Davis* for the respondent.

WILKINS, J. A single justice has reserved and reported this bar discipline matter to the full court. The Board of Bar Overseers (board) has recommended that Locksley H. Bryan (attorney) be disbarred (with three of the nine participating board members voting for lesser discipline). In May, 1990, a single justice of this court temporarily suspended the attorney from the practice of law. We agree with the board that a judgment of disbarment should be entered.

Based on a record that consists of the attorney's admission to all allegations against him except as to one client, a hearing committee of the board found that, over a two and one-half year period, the attorney engaged in a pattern of intentionally commingling and converting clients' funds, in most instances without intending to deprive the client of those funds. The committee ruled that the commingling of funds violated S.J.C. Rule 3:07, Canon 9, DR 9-102 (A), as ap-

pearing in 382 Mass. 795 (1981).[1] In two instances, clients were deprived of their funds for a period of time. In two other instances, the attorney intentionally deprived his clients of their funds. The hearing committee ruled that, in these two instances, the attorney violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6), as appearing in 382 Mass. 769-770 (1981),[2] and Canon 9, DR 9-102 (A) and (B), as appearing in 382 Mass. 795-796 (1981).[3]

The circumstances of the attorney's repetitive misuse of funds collected on behalf of clients need not be set forth in detail. It is apparent that the attorney repeatedly used clients' money for his personal benefit, sent checks to clients on bank accounts that lacked sufficient funds to satisfy the amount of the checks, improperly put personal funds in his client funds account, and, in certain instances, satisfied his obligation to one client by using the funds of another.

We recite the circumstances of the two clients whom the attorney intentionally deprived of funds. The facts of these two circumstances distinguish this disciplinary proceeding from *Matter of Driscoll*, 410 Mass. 695 (1991), where there was no deprivation of funds and the attorney did not intend to deprive clients of their funds permanently.

In the spring of 1989, a client retained the attorney to represent him in connection with a motor vehicle personal injury claim. In November, 1989, an insurance company sent the attorney a check in the amount of $7,000 in settlement of the

---

[1] With exceptions not relevant here, DR 9-102 (A) provides, "All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the State in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein."

[2] DR 1-102 (A) (4) and (6) provide, "A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresenta- tion. . . . (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

[3] DR 9-102 (B) (1) and (4) provide, "A lawyer shall: (1) Promptly no- tify a client of the receipt of his funds, securities, or other properties. . . . (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

claim. The attorney immediately opened a new bank account, as a business account and not as a client funds account, and deposited the settlement check in the new account. Twelve days later, he gave the client a check on that account in the amount of approximately $4,600, the client's share of the recovery. That check was not paid because of insufficient funds. About one month later, after the client had challenged the attorney concerning the dishonored check, the attorney gave the client another check, this time drawn on a bank account that had been closed for over two months. In April, 1990, after disciplinary proceedings had commenced before the board, the attorney delivered to the client, through bar counsel, a treasurer's check in the amount of the client's share of the settlement. The attorney obtained the funds to pay this client from funds of the next client we discuss.

About March 1, 1990, an insurance company sent the attorney a check in the amount of $30,000 in settlement of a client's claim. The attorney deposited the check in a client funds account, without obtaining the approval of prior counsel who was also a payee of the check. Later that month, the attorney received a check in the amount of $10,000 in settlement of a claim of the same client against the city of Boston. This check also listed prior counsel as a payee. Again, without the consent of prior counsel, the attorney deposited that check in the same bank account as the earlier check. On March 30, 1990, the attorney gave the client a check in the amount of his share of the two settlements. It was dishonored for insufficient funds on April 2, April 6, and April 9, and twice more thereafter. When the client met with the attorney on May 1, 1990, the attorney told the client that his professional career was on the line. In exchange for the attorney's promise to pay the client extra money, the attorney persuaded the client to sign an agreement stating that he had loaned the attorney the disputed funds. The hearing committee found that the attorney contrived the "loan" agreement because disciplinary proceedings were then pending against

the attorney. A single justice of this court suspended the attorney from the practice of law shortly thereafter. The attorney still owes this client $24,000.

The hearing committee said that, under the principles stated in *Matter of the Discipline of an Attorney*, 392 Mass. 827, 836-837 (1984), disbarment or an indefinite suspension would be warranted, but it opted to recommend a suspension of three years. The committee viewed as mitigating factors the attorney's relative youth, his short time (since 1982) at the bar, his lack of training and supervision, and the absence of any prior disciplinary proceeding. Further, the committee noted that every client but one was made whole within a relatively short time. A majority of the board rejected this recommendation, with three members presumably agreeing with the hearing committee's recommendation of suspension. The board and bar counsel recommend disbarment.

We deal here with persistent wrongdoing involving more than twelve clients, knowing misappropriations of funds for the attorney's benefit, and the conversion (intentional deprivation) of client funds. No attorney needs to be an older or long-time member of the bar or to have been trained and supervised in the conduct of his practice to know that what the attorney repeatedly did here is repugnant to the standards of the legal profession. The absence of prior discipline, as opposed to the existence of prior discipline, is not a substantial factor in selecting the level of discipline. See *Matter of Pike*, 408 Mass. 740, 745 (1990); *Matter of Alter*, 389 Mass. 153, 157 (1983). The attorney substantially impugned the integrity of the bar of the Commonwealth in the eyes of more than twelve clients and various other people who knew of his actions.

Disbarment or indefinite suspension is the presumptively correct discipline in this case. *Matter of the Discipline of an Attorney*, *supra* at 836-837 (accepting as a general guide that "[i]ntentional use [of clients' funds], with intent to deprive or with actual deprivation, should be disciplined by disbarment or indefinite suspension").[4] See *Matter of Clooney*, 403 Mass. 654, 657-658 (1988); *Matter of McInerney*, 389

---

[4] If, as in this case, the full court has spoken definitively on a subject, the opinions of individual Justices of this court are not appropriate precedent. *Matter of Driscoll*, 410 Mass. 695, 705 (1991) (Greaney, J., dissenting).

Mass. 528, 531 (1983). The absence of restitution is a factor in choosing between disbarment and indefinite suspension, as is the fact (not considered by the hearing committee or the board) that, following his temporary suspension, the attorney failed to comply with the terms of his suspension. He did not notify his clients, failed to withdraw his court appearances, and did not file an affidavit of compliance. S.J.C. Rule 4:01, § 17, as appearing in 365 Mass. 696, 710-711 (1974). Although adjudged in contempt, he persisted in noncompliance, thereby requiring the appointment of a commissioner to protect his clients' interests.

The attorney's repetitive wrongdoing; his conversion of clients' funds; the loss of funds by one client; the attorney's continued wrongdoing, even after disciplinary proceedings had commenced; and the absence of any substantial mitigating factor, collectively, support an order of disbarment. The attorney's obstinate failure to comply with the notice requirements of this court following his temporary suspension is not necessary to but strengthens that conclusion.

A judgment of disbarment shall be entered.

*So ordered.*