## In the Matter of Owen R. Carrigan.

Suffolk. December 8, 1992. - February 23, 1993.

Present: Liacos, C.J., Wilkins, Abrams, Nolan, Lynch, O'Connor, & Greaney, JJ.

*Attorney at Law*, Disciplinary proceeding, Commingling of funds, Suspension.

An appeal panel of the Board of Bar Overseers did not exceed its authority in drawing reasonable inferences from the record and in recommending that the board clarify the findings of the hearing committee to make the findings consistent with the evidence presented, and the board did not err in adopting the recommendations. [372-373]

In the circumstances of a bar discipline proceeding, the appropriate sanction for an attorney's intentional misuse of client funds was a six-month suspension from the practice of law. [373-374]

Information filed in the Supreme Judicial Court for the county of Suffolk on April 3, 1992.

The case was reported by *Wilkins*, J.

*Robert I. Warner*, Assistant Bar Counsel.

*Richard A. Gargiulo* (*Patricia Noyes-Corrigan* with him) for the respondent.

Greaney, J. This bar discipline case was reserved and reported to the full bench by a single justice. The Board of Bar Overseers (board) filed an information in the Supreme Judicial Court for the county of Suffolk recommending that the respondent, Owen R. Carrigan, be suspended from the practice of law for one year for his intentional misuse of client funds.[1] Bar counsel concurs with this recommendation. The respondent, however, argues that there were errors of law in the findings adopted by the board. The respondent further

---

[1]Four members of the board voted against the recommended one-year suspension, three preferring a lesser sanction and one preferring a greater sanction.

claims that the discipline recommended in his case is excessive as compared to similar cases decided by this court. We conclude that there were no errors in the findings adopted by the board and that a period of suspension is required. We order a six-month period of suspension.

Based on a hearing and a written stipulation of facts, a hearing committee of the board found the following. In late 1981 or early 1982, the respondent was retained by Shelby Insurance Group (Shelby) to pursue subrogation claims on its behalf. The respondent was responsible for settling or litigating the subrogation claims and for collecting funds due to Shelby on these matters. During the period October, 1982, through July, 1987, the respondent represented Shelby on no fewer than forty-five matters and collected funds on behalf of Shelby. The respondent did not establish a clearly outlined protocol with Shelby as to how Shelby was to be notified of or paid collected funds. The respondent testified, however, that funds collected on a subrogation matter, less the respondent's fee and expenses, were due to be paid to Shelby when he determined that no further funds would be collected on the particular matter. Shelby ceased doing business in Massachusetts in July, 1987, and transferred all of its outstanding matters to its offices in Connecticut.

At various times during the period October, 1982, through July, 1987, the respondent did not maintain a client's escrow account and deposited funds collected on behalf of Shelby into his personal bank account. During this period, the respondent suffered severe financial difficulties as well as personal problems. At one point his automobile was repossessed and the Internal Revenue Service seized his eight year old daughter's bank account in which the respondent had $300. His private legal practice was not thriving and, in order to meet what he felt were his family's basic needs, the respondent resorted to using whatever funds came into his possession, including funds he had collected on behalf of Shelby. The balance in his personal bank account was generally below the amount needed to cover the cumulative payment due Shelby. At all times, the respondent was aware that he owed

money to Shelby and intended to repay it in full as soon as
he was able to do so. Due to his financial straits, however, he
did not reach a point where he felt he had the ability to pay
Shelby.

In July, 1989, Shelby sent a letter by certified mail to the
respondent requesting a status report on subrogation matters
handled by him. The respondent replied by letter in October,
1989. Following receipt of that response, Shelby retained a
Massachusetts attorney to ascertain the status of outstanding
matters handled for it by the respondent and to determine
the amount of money owed by the respondent. It was deter-
mined that the respondent had failed to remit funds due and
owing to Shelby, $6,424.80 in total, which the respondent
had collected during the period October, 1982, through Au-
gust, 1986. The respondent obtained a home equity loan and
made full payment of $6,424.80 in January, 1990. Shelby
filed a complaint with the board following receipt of this
payment.

Based on its factual findings, the hearing committee deter-
mined that the respondent had violated the following discipli-
nary rules: S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and
(6), as appearing in 382 Mass. 769-770 (1981),[2] Canon 9,
DR 9-102 (A) and (B) (1), (3) and (4), as appearing in 382
Mass. 795-796 (1981).[3] The hearing committee found credi-

---

[2]Canon 1, DR 1-102 (A), provides, "A lawyer shall not: . . . (4) Engage
in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . (6)
Engage in any other conduct that adversely reflects on his fitness to prac-
tice law."

[3]With exceptions not here relevant, DR 9-102 (A) provides, "All funds
of clients paid to a lawyer or law firm, other than advances for costs and
expenses, shall be deposited in one or more identifiable bank accounts
maintained in the State in which the law office is situated and no funds
belonging to the lawyer or law firm shall be deposited therein."

Canon 9, DR 9-102 (B), provides, "A lawyer shall: (1) Promptly notify
a client of the receipt of his funds, securities, or other properties. . . . (3)
Maintain complete records of the handling, maintenance and disposition of
all funds, securities and other properties of a client coming into the posses-
sion of the lawyer from the time of receipt to the time of final distribution;
preserve such records for a period of ten years after final distribution of
such funds, securities [or] other properties; and render appropriate ac-
counts to the client regarding them. . . . (4) Promptly pay or deliver to the

ble the respondent's assertion that "he always intended to pay the money due to Shelby" and, relying on that assertion, stated that "[w]hile Shelby was actually deprived of its funds temporarily, it appears that such deprivation by the Respondent was not intentional."[4] In mitigation of the respondent's misconduct, the hearing committee found that the respondent had come from a severely dysfunctional family and began seeking help in early 1991 for the problems which caused him to engage in improper conduct. The respondent had not been the subject of any prior disciplinary proceeding, maintained a good personal and professional reputation, and fully cooperated with the investigation by the board. He acknowledged his wrongdoing and expressed substantial and credible remorse for his actions. The respondent has taken affirmative steps to resolve the problems which caused him to engage in improper conduct. The hearing committee recommended that the respondent be suspended from the practice of law for one year and, subject to certain conditions, that this suspension be suspended for one year.

Bar counsel appealed to the board from both the hearing committee's conclusion that the respondent did not intend to deprive Shelby of its funds, and its recommended sanction. Based upon the parties' written briefs and oral argument, an appeal panel, composed of three members of the board, issued a report recommending that the board modify the hearing committee's findings by the addition of a finding that the respondent acted with intent temporarily to deprive Shelby of its funds. Recognizing the hearing committee's role as the sole judge of the credibility of live testimony, the appeal panel accepted the finding that the respondent always intended to repay Shelby and, therefore, the conclusion that the respondent did not intend permanently to deprive Shelby

---

client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

[4]The hearing committee did not specifically find that the respondent had intentionally used Shelby's funds. However, this finding was implicit in the committee's subsidiary findings as well as its recommended sanction.

of its funds.[5] The appeal panel noted, however, that the hearing committee had failed to distinguish between intent permanently to deprive and intent temporarily to deprive. If, in fact, the hearing committee had found that the respondent did not intend to deprive Shelby of its funds even temporarily, the appeal panel concluded that this finding was erroneous. Based on the subsidiary findings that the respondent knew at all times that the funds he used were owed to Shelby, that it was wrong to use these funds, and that he intended to repay Shelby as soon as his financial position had sufficiently improved, the appeal panel concluded that this intentional use of Shelby's funds, after the time the respondent determined they were due to be paid to Shelby, constituted an intent temporarily to deprive Shelby of its funds. The board adopted this conclusion as well as the appeal panel's recommendation that the respondent be suspended from the practice of law for one year.

The respondent claims that the appeal panel exceeded its authority in reviewing the hearing committee's findings because the appeal panel's conclusion regarding intent was based on a determination of the respondent's credibility which necessarily differed from that of the hearing committee. The record does not support this claim. At the hearing, the respondent testified that he knew at the time he used certain funds that these funds rightfully belonged to Shelby and were due Shelby. In the stipulation of facts, the respondent agreed that "$6,424.80 of the funds collected by . . . [him] rightfully belonged to Shelby and was payable to Shelby

---

[5]The record reveals that the hearing committee could have found that the respondent had intended permanently to deprive Shelby of its funds. The respondent took out a $25,000 home equity loan in 1988, and, although he knew that Shelby was owed money at that time (certain funds were several years overdue), he chose not to pay Shelby and used the loan proceeds to pay business and personal expenses. In light of the fact that the evidence warranted a finding that the respondent did not intend to repay Shelby, but paid the funds only because Shelby hired a lawyer and demanded payment, it appears that the hearing committee was referring only to "intent permanently to deprive" when it found that the respondent did not intend to deprive Shelby of its funds.

. . . ." The respondent further admitted that he had "failed to advise Shelby of the collection of the $6,424.80." The appeal panel's finding regarding the respondent's intent is not at all contrary to the respondent's testimony and stipulation and therefore does not conflict with any of the hearing committee's findings based on credibility. When an attorney knowingly misappropriates client funds and knowingly continues to use these funds after they are due and payable, it is reasonable to conclude that the attorney has intentionally deprived the client of these funds, at least temporarily.[6] It was clearly within the authority of the appeal panel to draw reasonable inferences from the facts and to recommend that the board clarify the findings of the hearing committee to make them consistent with the evidence presented. S.J.C. Rule 4:01, § 8 (3), as amended, 381 Mass. 787 (1980). Rules of the Board of Bar Overseers § 3.50. See *Matter of Orfanello*, 411 Mass. 551, 556 (1992). We find no errors of law in the findings adopted by the board.

We turn to the question of appropriate discipline. In *Matter of the Discipline of an Attorney*, 392 Mass. 827, 836

---

[6]We also reject the respondent's argument that, as matter of law, Shelby was not actually deprived of its funds. The respondent relies upon a statement in a later case which refers to *Matter of Driscoll*, 410 Mass. 695 (1991), as a "no deprivation" case. See *Matter of Bryan*, 411 Mass. 288, 289 (1991). The respondent points out that in *Matter of Driscoll, supra* at 696 n.1, Driscoll testified that certain funds, plus interest, were paid to a client two months after the client became entitled to receive these funds. The statement in *Matter of Bryan* referring to *Matter of Driscoll* as a "no deprivation" case is not controlling here because there was no express factual finding in *Driscoll* regarding deprivation. See also *Matter of Dawkins*, 412 Mass. 90, 94 (1992). There is deprivation of a client's funds whenever an attorney uses client funds for unauthorized purposes after the time these funds are due and payable. Furthermore, the respondent's argument that Shelby was not actually deprived of its funds because there was no definite arrangement concerning payment of funds is unconvincing. Even in the absence of a defined protocol, it is a lawyer's duty to notify a client promptly of receipt of funds on behalf of the client. S.J.C. Rule 3:07, Canon 9, DR 9-102 (B) (1). The respondent did not notify Shelby of receipt of all funds and continued to use certain funds more than four years after they became payable, knowing that the funds were payable. Clearly, Shelby did not request payment prior to 1989, because Shelby had not been notified that the funds had been collected.

(1984), this court, in recognition of the need for consistency in the disposition of bar discipline matters, adopted a general guide of sanctions to be imposed when an attorney engages in commingling and misuse of clients' funds. Bar counsel asserts that the respondent's conduct falls within the most serious category, intentional use with intent to deprive or with actual deprivation. Although this offense calls for the sanction of disbarment or indefinite suspension, bar counsel concurs with the board's recommendation that the respondent be suspended for a period of one year. The respondent, however, points to two cases recently decided by this court, *Matter of Driscoll*, 410 Mass. 695 (1991), and *Matter of Dawkins*, 412 Mass. 90 (1992), to support his claim that suspension for a full year is markedly more severe than sanctions imposed on attorneys in similar cases. See *Matter of Alter*, 389 Mass. 153, 156 (1983). Driscoll was publicly censured for his misuse of client funds while Dawkins received a six-month period of suspension. The respondent concedes that his misconduct warrants a greater sanction than the public censure received by Driscoll, but argues that he should receive a lesser sanction than the six-month suspension received by Dawkins. We are not persuaded by the respondent's arguments that he should receive less than the period of suspension imposed on Dawkins. We view both cases as involving the type of serious misconduct that calls for a six-month suspension. Accordingly, we direct that a judgment be entered in the Supreme Judicial Court for the county of Suffolk ordering that the respondent be suspended from the practice of law for a period of six months.

*So ordered.*