# In the Matter of Stephen E. Schoepfer.

Suffolk. November 3, 1997. - December 3, 1997.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Marshall, & Ireland, JJ.

*Attorney at Law,* Disciplinary proceeding, Commingling of funds, Suspension.

Review of bar disciplinary cases, beginning with *Matter of the Discipline of an Attorney*, 392 Mass. 827 (1984), concerning the appropriate level of discipline to be imposed when a lawyer has commingled ciients' funds with the lawyer's own and then used the commingled funds for the lawyer's own purposes. [185-187]

This court reaffirmed its acceptance of the standards of discipline proposed by bar counsel and set forth in *Matter of the Discipline of an Attorney*, 392 Mass. 827, 836 (1984). [187-188]

An order of indefinite suspension of an attorney was the appropriate sanction for the attorney's intentional conversion of a client's funds to his own use that resulted in a delay in the distribution of estate funds to residuary beneficiaries. [188]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on November 6, 1996.

The case was heard by *Fried*, J.

*Neil V. McKittrick* (*Matthew T. Henshon* with him) for Stephen E. Schoepfer.

*Michael Fredrickson* (*Karen Doran O'Toole* with him) for the Board of Bar Overseers.

*Roger Geller*, Assistant Bar Counsel.

WILKINS, C.J. In this appeal from an order of a single justice of this court indefinitely suspending the respondent, Stephen E. Schoepfer, from the practice of law, we are confronted with differing contentions concerning the appropriate discipline to impose. Bar counsel favors the indefinite suspension that the single justice ordered and a hearing committee (committee) of the Board of Bar Overseers (board) had recommended. The board recommends a suspension from the practice of law, preferably for a period of three years. The respondent urges a two-year suspension, which is the discipline that the board recommended in its vote of October 21, 1996.

The disagreement between bar counsel and the board concerning the appropriate discipline in this case arises from differing views of this court's characterization of the "standard" sanction that should be imposed when a lawyer intentionally misuses clients' funds. It has been suggested, with reason, that this court has not articulated and adhered to a consistent position concerning the sanctions to be imposed when a lawyer has intentionally misused a client's funds. This opinion will attempt to provide guidance concerning the level of discipline in future cases and will conclude that an indefinite suspension is the appropriate discipline in this case.

We recite findings of the committee, which the board adopted, that bear on the allegation that the respondent commingled a client's funds with his own and used the client's funds for his own expenses. The committee concluded that the respondent intentionally commingled his personal funds with those of an estate of which he was executor and intended, at least temporarily, to deprive the estate of the use of those funds. In 1986, the respondent became the executor of the estate of Ellen Leinonen, for whom he had acted as lawyer and guardian. In the middle of August, 1986, the respondent deposited $9,900 from the Leinonen estate in his personal money market account. Nine days later he withdrew that same amount and used it for his own purposes. In September, 1986, he again took $9,900 from the estate and deposited it in his personal money market account. Between that date and the end of the year, the respondent withdrew $9,700 from the money market account and again used the funds for his personal expenses. Late in December, 1988, the respondent deposited approximately $20,600 of his own funds in his money market account. Early in 1989, he transferred approximately $23,000 from the money market account to the Leinonen estate account, representing the funds that he had taken from that estate in 1986 plus interest.[1]

The evidence supports the hearing committee's finding that

---

[1]Other facts found by the hearing committee amounting to disciplinary violations involve (a) the respondent's mishandling of Leinonen's funds while acting as guardian; (b) unnecessary delay in distributing funds to the residuary beneficiaries under Leinonen's will; (c) overpayment to a private investigator for services he performed for the guardianship; and (d) failure to file timely fiduciary accounts and otherwise neglecting the management of the guardianship and the estate. The board advises us that the respondent received a private reprimand in 1988. See 5 Mass. Att'y Discipline Rep. 554 (1988). These facts obviously reinforce our decision to suspend the respondent

the respondent chose the amount of $9,900 in order to avoid reporting the transfer to the Internal Revenue Service. He testified that, if he had transferred $10,000 or more, he would have had to file a tax form, and he wanted to avoid that. The hearing committee was entitled to credit that testimony and not to credit the respondent's explanation that he was only trying to avoid the expense and delay to the estate that filing the form would have caused. See *Matter of Saab*, 406 Mass. 315, 328-329 (1989). An inference of an intent not to disclose his action was warranted.

Our analysis begins with *Matter of the Discipline of an Attorney*, 392 Mass. 827 (1984) (known as the *Three Attorneys* case) in which we stated "principles which will be relevant in all cases concerning attorneys' conduct which occurs after the date of this opinion." *Id.* at 835. In that case, the board and bar counsel each proposed policy positions concerning the appropriate level of discipline to impose when a lawyer has commingled clients' funds with his own and then used the commingled funds for his own purposes. *Id.* at 835-836. Although we stated that the two positions were consistent (*id.* at 836) and concurred generally with each statement of principles (*id.* at 836-837), bar counsel's statement was more definite, as we noted (*id.* at 836), and thus had less "play in the joints" than did the board's principles.[2] The result of our undifferentiated indorsement of these two principles has been an occasional disagreement

---

indefinitely from the practice of law. In an attempt to keep our analysis unaffected by extraneous considerations, we do not consider or rely on these additional disciplinary violations in deciding the appropriate discipline to impose for the commingling and misuse of clients' funds.

[2]The standard sanctions that bar counsel advanced were as follows:

"Intentional commingling of clients' funds with those of an attorney should be disciplined by private reprimand. Unintentional, careless use of clients' funds should be disciplined by public censure.

"Intentional use of clients' funds, with no intent to permanently or temporarily deprive the client, and no actual deprivation, should be punished by a term of suspension of appropriate length.

"Intentional use, with intent to deprive or with actual deprivation, should be disciplined by disbarment or indefinite suspension." *Matter of the Discipline of an Attorney*, 392 Mass. 827, 836 (1984).

The board's position was "that public discipline is always merited in the case of a lawyer who has commingled clients' funds and the lawyer's funds and who has then used the commingled funds for his or her own

between the board and bar counsel and the opportunity for respondents to argue, not unreasonably, that the discipline proposed to this court is inconsistent with the discipline imposed in other cases.

After the *Three Attorneys* opinion, this court has generally stated that disbarment or indefinite suspension is the presumptive sanction if a lawyer has intentionally deprived a client of funds. See *Matter of Elias*, 418 Mass. 723, 735 (1994); *Matter of Luongo*, 416 Mass. 308, 309 (1993); *Matter of Carrigan*, 414 Mass. 368, 374 (1993); *Matter of Dawkins*, 412 Mass. 90, 93 (1992); *Matter of Bryan*, 411 Mass. 288, 291 (1991). In deciding what discipline to impose, however, we have not applied that standard with consistency.

In 1986, bar counsel urged the indefinite suspension of Paul H. Deragon. *Matter of Deragon*, 398 Mass. 127, 129 (1986). The board argued for a suspension of two years. *Id.* at 129-130. A single justice imposed a public censure; bar counsel and the board appealed; and a divided court (four to two) affirmed the judgment imposing a public censure. *Id.* at 133. The author of this opinion and the author of the *Three Attorneys* opinion dissented because the evidence showed that Deragon had converted clients' funds. *Id.* at 133 (Wilkins, J., dissenting, with whom Hennessey, C.J., joined).[3]

The court divided again in *Matter of Driscoll*, 410 Mass. 695 (1991), in which bar counsel sought a three-year suspension (*id.* at 695), the board argued for public censure (*id.*), and the court, divided four to three, imposed a public censure (*id.* at 702). The court concluded that there had been no dishonesty and little, if any, harm to clients (*id.*), although Driscoll had used clients' funds for personal and office expenses. *Id.* at 696-697. The dissent urged a suspension of appropriate length because there was

purposes." *Id.* at 835-836. We viewed as implied in the board's statement that, "in any such case where it is shown, additionally, that there is 'wrongful intent,' suspension or disbarment from the practice of law is appropriate, with the extent of the sanction dependent upon the extent of the exacerbating facts." *Id.* at 836.

[3]While the disciplinary proceedings were in progress before the board and this court, Deragon stole thousands of dollars from estates. *Matter of Deragon*, 5 Mass. Att'y Discipline Rep. 96, 104-105 (1986) (Summary). On November 20, 1986, a single justice of this court suspended Deragon from the practice of law and later disbarred him. *Id.* at 106, 107. On December 5, 1987, Deragon pleaded guilty to fiduciary embezzlement and larceny and was sentenced to State prison. *Id.* at 105.

a knowing and intentional misappropriation of clients' funds (without an intent to steal). *Id.* at 703 (Greaney, J., dissenting, with whom Wilkins and Abrams, JJ., joined).

In *Matter of Dawkins*, 412 Mass. 90 (1992), the lawyer had deliberately misused a client's funds for his own purposes and had temporarily deprived his client of those funds, causing harm to the client. *Id.* at 91-93. The board, by a bare majority, had sought only a public censure; bar counsel urged a period of suspension, not the indefinite suspension that his principles stated in the *Three Attorneys* opinion called for. *Id.* at 90 n.1, 92-93. This court ordered the imposition of a six-month suspension from the practice of law, not an indefinite suspension. *Id.* at 97. In retrospect, the failure to impose an indefinite suspension is hard to justify. There were no substantial mitigating circumstances.

In *Matter of Carrigan*, 414 Mass. 368 (1993), the parties debated whether the court should impose lesser discipline than the board and bar counsel's recommendation of a suspension from the practice of law for one year. *Id.* at 374. No party urged the sanction of disbarment or indefinite suspension that the court frankly stated was called for under the standards of the *Three Attorneys* case. *Id.* at 373-374. Influenced in part by the modest discipline that was imposed in *Matter of Dawkins*, *supra* (six-month suspension), despite the court's acknowledgment that the standard sanction was indefinite suspension (*Matter of Dawkins*, *supra* at 93), the court imposed only a six-month suspension on Carrigan. *Id.*

The time has arrived for a clarification of our position. We reaffirm our acceptance of the standards proposed by bar counsel in the *Three Attorneys* case (and accept the board's general principles proposed in the *Three Attorneys* case only as they are refined by bar counsel's standards). The respondent commingled a client's funds with his own. That act was not unintentional or careless. The intentional use of clients' funds normally calls for "a term suspension of appropriate length." See *Three Attorneys*, *supra* at 836. If additionally an attorney intended to deprive the client of funds, permanently or temporarily, or if the client was deprived of funds (no matter what the attorney intended), the standard discipline is disbarment or indefinite suspension. *Id.*

An offending lawyer has a heavy burden to demonstrate that these principles should not be applied to him. *Id.* at 837. There may be special mitigating facts that justify less severe discipline.

Our rule is not mandatory. If a disability caused a lawyer's conduct, the discipline should be moderated, and, if that disability can be treated, special terms and considerations may be appropriate. On the other hand, there may be, as here, aggravating circumstances, such as other violations of disciplinary rules established in the same proceeding or earlier, which might warrant a sanction greater than otherwise appropriate.

In this case, the respondent intended to deprive the Leinonen estate of funds at least temporarily. There is no doubt that he converted funds to his own use and caused a delay in the distribution of estate funds to the residuary beneficiaries. The standards of *Three Attorneys* that we have adopted are our guides here. The uneven disposition of past disciplinary cases concerning the misuse of clients' funds requires us not to try to decide whether the sanction we impose is reasonably consistent with sanctions heretofore imposed in similar cases. See *Matter of Alter*, 389 Mass. 153, 156 (1983). An order of indefinite suspension is required.

For the future, a hearing committee's findings concerning the lawyer's intention in commingling clients' funds and whether the client was deprived of funds will be important. It will be incumbent on all, including this court, who propose the imposition of a sanction that departs from the general standards that we have affirmed today to provide clear and convincing reasons for doing so. The imposition of an indefinite suspension or disbarment is hardly unfair if a lawyer has intentionally mingled clients' funds with his own, has intentionally used them for his own purposes, and has either intended to deprive the client of the funds, at least temporarily, or caused a deprivation. Sanctions imposed in these cases must provide a strong deterrent to lawyers engaging in such practices, and a clear showing to the public that their interests as clients are matters of major concern and will be protected.

The order of indefinite suspension entered by the single justice is affirmed.

*So ordered.*