In the Matter of Osamwonyi Ehi Osagiede. January 15, 2009. *Attorney at Law,* Disciplinary proceeding, Commingling of funds, Suspension.

The respondent, Osamwonyi Ehi Osagiede, appeals from a judgment of a single justice of this court ordering that he be indefinitely suspended from the practice of law. We affirm.

*Background.* Bar counsel filed with the Board of Bar Overseers (board) a petition for discipline alleging that Osagiede had intentionally misused a client's funds, intentionally deprived the client of the funds, and misrepresented the status of settlement to the client; negligently misused other clients' funds and deprived the clients of the funds; commingled personal, business, and client funds; failed to pursue his clients' goals and to keep them informed; failed to keep required records for several accounts holding trust funds; and failed to render accountings. A hearing committee found in substance that bar counsel had proved the petition's allegations, and that Osagiede violated a number of the Massachusetts Rules of Professional Conduct, including Mass. R. Prof. C. 1.2 (a), 426 Mass. 1310 (1998); Mass. R. Prof. C. 1.4, 426 Mass. 1314 (1998); Mass. R. Prof. C. 1.5 (c), as amended, 432 Mass. 1301 (2000); Mass. R. Prof. C. 1.15 (a), (b), (c), (d), and (f), 426 Mass. 1363 (1998); and Mass. R. Prof. C. 8.4 (c) and (h), 426 Mass. 1429 (1998). The committee recommended that Osagiede be indefinitely suspended and that his reinstatement be conditioned on his attending, in the year preceding his petition for reinstatement, a continuing legal education course, of bar counsel's choosing, in trust accounting. The board agreed. The board filed an information that was heard by a single justice, who issued an order of indefinite suspension.

The petition for discipline filed by bar counsel contained five counts. Three of those counts concerned various IOLTA and business accounts maintained by Osagiede and his failure to make and maintain complete records of his receipt, maintenance, and disbursement of client funds held in those accounts. The petition's other two counts addressed Osagiede's mishandling of settlement funds for specific clients. In particular, count one delineates Osagiede's mishandling of funds for four clients, as well as his handling of one IOLTA account; count five addresses Osagiede's mishandling of a fifth client's funds.

The following facts were found by the hearing committee and adopted by the board. Sometime in 2003, Osagiede closed the bank account that he was then using for business and began paying both his business and personal expenses from an IOLTA account that he maintained at Citizens Bank (and its predecessor). A dishonored check notice from the bank prompted an exchange of correspondence between bar counsel and Osagiede. Bar counsel explained Osagiede's obligation to maintain separate IOLTA and business accounts and Osagiede then opened a separate business account, in August, 2003. Osagiede continued, however, to commingle clients' funds, earned fees, and other personal funds in the IOLTA account. He also paid personal or business expenses from the account and failed to keep any kind of detailed accounting of the transactions.

In addition to commingling client funds, Osagiede also misused the funds. Around January 7, 2003, he deposited into the IOLTA account a settlement check that he had received on behalf of a client. Osagiede did not pay the client her share of the settlement until about February 27, 2003. Between the date that the settlement check was deposited and the end of January, 2003, Osagiede exhausted the balance of the IOLTA account, using the money in the account, including the client's settlement funds, to pay unrelated expenses. Between the end of January and February 27, 2003, Osagiede deposited several other clients' settlement funds into the IOLTA account, raising the balance sufficiently to then cover the client's payment. Osagiede similarly mishandled settlement funds for three other clients between May, 2003, and April, 2004.

On March 3, 2006, Osagiede received a settlement check for Sammie Hartzog, which was dated February 28, 2006. Osagiede deposited the check into a Bank of America payroll account. When Hartzog called Osagiede's office in March to ask about the settlement check, he was told that Osagiede was out of town. (Osagiede had gone to Nigeria on March 18, 2006.) Hartzog eventually received a check from Osagiede, at a meeting in Osagiede's office, on April 19, 2006. According to Hartzog, whose testimony was credited by the hearing committee, the check that he received from Osagiede was drawn on Osagiede's business account and postdated to April 28, 2006. Osagiede told Hartzog not to deposit the check until that date and when Hartzog asked why, Osagiede responded that he had bills to pay and that the money was not yet in the account.

Between March 3, 2006, the date that Osagiede received Hartzog's settlement check, and April 28, 2006, the postdated date of the check that Osagiede gave to Hartzog on April 19, 2006, Osagiede did not transfer Hartzog's settlement funds from the payroll account, into which the funds had been deposited, to the checking account, from which Hartzog was paid. During this time, the balance in Osagiede's payroll account dropped below the $1,913.42 that was due Hartzog from the settlement funds.

*Discussion.* In his appeal from the decision of the single justice, Osagiede raises two issues: that the hearing committee and the board improperly used "propensity reasoning" in reaching the decision that Osagiede intentionally misused client funds; and that the board improperly considered Osagiede's national origin against him. Osagiede does not specifically argue that the sanction — an indefinite suspension — was improper. Rather, he seeks to have the board's determination vacated and the case remanded for a new hearing.

1. The finding that Osagiede intentionally misused client funds, intended to deprive a client of funds, and actually did deprive a client of funds was based on Osagiede's handling of Hartzog's settlement funds. That Osagiede acted intentionally was, in turn, the basis for the sanction of an indefinite suspension. Osagiede asserts that in reaching its conclusion that he had intentionally misused Hartzog's settlement funds, the hearing committee relied on his poor bookkeeping habits and improperly based its decision on what the committee, according to Osagiede, considered to be Osagiede's propensity to misuse client funds.[1] If the committee had acted in such a manner it would indeed be improper. See, e.g., *Commonwealth* v. *Helfant*, 398 Mass. 214, 224-225 (1986) (evidence of prior misbehavior inadmissible for purpose of showing defendant's bad character or propensity to commit crime charged), and cases cited.[2] The committee, however, has not done so.

The committee specifically credited Hartzog's testimony that when he received his settlement funds check from Osagiede on April 19, 2006, Osagiede told him not to deposit the check until April 28, 2006, the date to which the check was postdated, because Osagiede had bills to pay and the money was not yet in the account on which the check would be drawn. The committee credited Hartzog's testimony for three reasons: that Hartzog was generally credible; that it was in fact true that Osagiede had used Hartzog's funds to pay unrelated bills and did not have enough money in his account to cover the check on April 19, 2006; and that this admission was consistent with Osagiede's pattern of misusing client funds and his "general disregard for his fiduciary duties concerning client funds." Thus, to the extent that the committee considered evidence of Osagiede's general misuse of client funds — four specific incidents of which the committee had heard and accepted in connection with count one of the petition for discipline — it was only in the context of crediting Hartzog's testimony. The committee did not, in other words, base its decision of intentional misuse on any "propensity" to misuse client funds.

Furthermore, as the board noted, bar counsel had previously warned Osagiede about the mishandling of client funds. Against that backdrop, it was not difficult for the hearing committee to infer that, when Osagiede deposited Hartzog's settlement funds into his payroll account, he did so intentionally. It was also inferable, from Hartzog's credited testimony, that Osagiede deprived Hartzog, albeit temporarily, of his funds because Osagiede had used the funds to pay his bills.

2. We turn now to the second issue raised by Osagiede — that the hearing committee and the board improperly considered his national origin against

---

[1]Osagiede does not deny that he is a poor bookkeeper.

[2]Both parties rely on criminal evidentiary principles in support of their respective positions. The board did as well.

him. We find no merit to this assertion. At Osagiede's hearing, bar counsel questioned Osagiede about his involvement in Nigerian politics, his absences from the United States while he was a candidate in a primary election in Nigeria, and the maintenance of his legal practice while he was away. Osagiede's counsel objected to the line of questioning, arguing that bar counsel's references to Nigeria as Osagiede's home was meant to imply that Osagiede was "less than an American than any other American citizen in this country" and that the questions "clearly point[ed] towards unfair prejudice against [his] client . . . in terms of race and in terms of his citizenship." The hearing committee overruled the objection, after indicating that the implications raised by Osagiede's counsel had not occurred to them, but also asked bar counsel to try to ask any further questions in such a way as to obviate the concerns raised by Osagiede's counsel. Bar counsel did not ask any further questions.

Osagiede asserts that bar counsel was trying to suggest that because Osagiede is from Nigeria he would suffer less from a harsh sanction than would an attorney from the United States, and that the hearing committee then improperly considered his national origin in determining the sanction to be imposed. In its consideration of any aggravating or mitigating factors, the hearing committee determined that given Osagiede's education, accomplishments as an educator and a journalist, and involvement in Nigerian politics for which Osagiede was prepared to move back to Nigeria if necessary, he had not carried the burden of showing that a suspension would cause severe hardship. See *Matter of Johnson*, 23 Mass. Att'y Discipline Rep. 327, 335 (2007), *S.C.*, 452 Mass. 1010 (2008) (respondent has burden of proving matters in mitigation). We agree with the board that the committee was simply indicating that suspending Osagiede would not work any special hardship because he had skills and experience in other areas. That assessment had nothing to do with Osagiede's national origin.

The presumptive sanction for the intentional misuse of client funds, with an intent to deprive and actual deprivation of the funds, is an indefinite suspension or disbarment, *Matter of Schoepfer*, 426 Mass. 183, 187 (1997), citing *Matter of the Discipline of an Attorney*, 392 Mass. 827, 836 (1984), and the record reflects no reason that this sanction should not be imposed in this case.

*Conclusion.* We find no error in the hearing committee's and the board's consideration of the evidence or reference to Osagiede's national origin.

*Judgment affirmed.*

*Edward S. Cheng* (*Courtney A. Clark* with him) for the respondent.
*John W. Marshall*, First Assistant Bar Counsel.