IN THE MATTER OF THEODORE C. GARABEDIAN.

Suffolk. April 6, 1993. - August 2, 1993.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Attorney at Law,* Disciplinary proceeding, Public censure, Suspension.

On appeal by bar counsel from judgment of a single justice of this court imposing a public censure on an attorney who, while representing a client in a personal injury case, neglected the client's case and failed to cooperate with bar counsel's investigation, the court concluded that, given the attorney's prior history of discipline, including two previous instances of discipline for failure to cooperate with bar counsel, and the fact that the present failure to cooperate with bar counsel was coupled with neglect of a client matter, the judgment of the single justice was markedly disparate in its leniency from the sanctions imposed by the various single justices in similar cases, and ordered the attorney suspended from the practice of law for six months and to pay costs to the Board of Bar Overseers in the amount of $1,713.72. [24-26]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on September 23, 1992.

The case was heard by *Nolan,* J.

*Robert I. Warner,* Assistant Bar Counsel, & *Karen D. O'Toole.*

*Philip J. MacCarthy* for the respondent.

LIACOS, C.J. A single justice of this court entered an order publicly censuring Attorney Theodore C. Garabedian (respondent) for professional misconduct. Additionally, the single justice ordered the respondent to pay costs of $1,713.72 to the Board of Bar Overseers. Bar counsel appeals, arguing that a public censure is a markedly lenient and disparate sanction where the respondent neglected a client's case, repeatedly failed to cooperate with bar counsel's investigations, and had a disciplinary history including failure to cooperate with bar counsel's prior investigations. Bar counsel contends

that a suspension from the practice of law for six months is necessary and appropriate. We agree.

We begin with a discussion of the formal disciplinary proceedings. On September 11, 1991, bar counsel filed a petition for discipline against the respondent. The petition alleged in four counts that the respondent had neglected two client matters (Palubeckis and Boucher) and had failed to cooperate with bar counsel's investigations into those matters. On October 15, 1991, the respondent filed his answer, denying all charges. After a hearing before a hearing committee of the Board of Bar Overseers, the hearing committee found that the respondent had neglected the personal injury case of one client, Palubeckis, by failing to file an action within the time prescribed by the statute of limitations. The hearing committee found that this neglect violated S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (3), as appearing in 382 Mass. 783 (1981), and Canon 7, DR 7-101 (A) (1), (2) and (3), as appearing in 382 Mass. 784 (1981). The hearing committee rejected bar counsel's claims that the respondent had neglected the Boucher case and that the respondent had violated S.J.C. Rule 4:01, § 3, as appearing in 381 Mass. 785 (1980), by failing to cooperate with bar counsel's investigation into the two matters.[1]

Although the hearing committee concluded that the respondent did not fail to cooperate with bar counsel, its findings of fact cite numerous instances where the respondent did not respond to requests for information and failed to attend scheduled meetings with bar counsel. We summarize these findings of fact in the margin.[2] In aggravation of the

---

[1]This rule provides in relevant part: "[T]he failure without good cause to (a) comply with a subpoena validly issued under Section 22 of this Rule 4:01; or (b) to respond to requests for information by the Bar Counsel or the Board of Bar Overseers made in the course of the processing of a complaint . . . shall constitute misconduct and shall be grounds for appropriate discipline."

[2]*The Palubeckis matter.* On December 7, 1989, Palubeckis filed a request for an investigation of the respondent's conduct with the Office of Bar Counsel (OBC). On December 12, 1989, the OBC sent a letter to the respondent requesting that he reply to the complaint within twenty

respondent's misconduct, the hearing committee cited four

days. The respondent did not reply. On February 14, 1990, the OBC wrote to the respondent again to repeat its request that he respond to the complaint. Again, the respondent failed to respond.

On March 9, 1990, the OBC sent a letter to the respondent requesting that he attend a meeting with assistant bar counsel to discuss the investigation. The respondent scheduled a meeting with bar counsel. On April 10, 1990, the respondent met with first assistant bar counsel Constance Vecchione (Vecchione) to discuss the Palubeckis allegations. The respondent conceded that he had neglected to file suit within the time set by the statute of limitations. He indicated that he thought he still might be able to arrange a settlement with the insurance company. Vecchione agreed to give him an opportunity to settle the matter.

During April and May of 1990, Vecchione had several conversations with the respondent regarding his efforts to resolve the Palubeckis matter with the insurance company. However, at the end of May, the respondent ceased communicating with Vecchione. As a result, Vecchione wrote to the respondent on May 30, 1990, to schedule a meeting on June 8, 1990. Vecchione requested that the respondent bring his file of the Palubeckis matter with him, and that he advise her if the date was not convenient. The respondent failed to respond or attend the meeting. Shortly after this scheduled meeting, he informed Vecchione that he was still attempting to resolve the Palubeckis matter with the insurance company. He assured her that he would contact her within a week. He did not do so.

On June 14, 1990, Vecchione wrote to the respondent informing him that if he did not report to her on his negotiations with the insurance company by June 20, 1990, she would recommend formal disciplinary proceedings. For the next two months, the respondent periodically communicated with Vecchione. By the middle of August, the respondent again had ceased communicating with Vecchione. On August 13, 1990, Vecchione wrote to the respondent to schedule a meeting on September 6, 1990. Again, Vecchione requested that the respondent bring his Palubeckis file with him and to advise her if the date was inconvenient. Again, the respondent failed to attend the scheduled meeting.

On November 29, 1990, assistant bar counsel Weisberg (Weisberg) wrote to the respondent stressing the need for him to cooperate and requesting that he produce certain documents, many of which did not deal with any matter pending before the Board, by December 7, 1990. The respondent did not provide the requested materials. Weisberg obtained a subpoena from the Board of Bar Overseers for the documents.

The respondent arrived two hours late for a meeting on January 14, 1991, and did not bring the requested documents. He stated that he would not make any statement without his counsel present. On January 23, 1991, Weisberg sent the respondent a letter directing him to appear with the documents on February 8, 1991. The respondent did not appear.

Weisberg filed a petition for enforcement of the subpoena with this court. A single justice of this court ordered the respondent to appear at the

previous disciplinary violations, including: (1) an informal admonition in 1980 from the board for collecting a contingent fee without a properly executed contingent fee agreement and for taking an excessive fee; (2) a six-month suspension from the practice of law in 1979-1980, by order of this court, by reason of his conviction for failing to file Massachusetts income tax returns for 1974 and 1975; (3) an informal admonition in 1982 for neglecting a legal matter and for failing to cooperate with bar counsel's investigation; and (4) a private reprimand in 1984 for his repeated failure to cooperate with bar counsel's investigations. In mitigation, the hearing committee found that there was no evidence that Palubeckis sustained any harm.

The hearing committee recommended that, for the one instance of neglect, the respondent be disciplined by a public censure. Bar counsel appealed, arguing that the hearing committee's report should be revised to include findings that the respondent had failed to cooperate with bar counsel's investigations into the two client matters. Bar counsel contended that, given the respondent's misconduct and his history of failing to cooperate with investigations and other disciplinary violations, a suspension from the practice of law was the appropriate sanction. The appeal panel accepted the hearing committee's findings of fact but unanimously concluded that the respondent's conduct throughout the two investigations constituted a failure to cooperate in violation of S.J.C. Rule 4:01, § 3. The panel found that "[t]he Respondent has demonstrated throughout this process a cavalier disregard for

---

OBC and to produce some, but not all, of the subpoenaed documents. The respondent complied.

*The Boucher matter.* In July, 1991, after receiving a letter from an attorney complaining that the respondent had engaged in professional misconduct, the OBC sent a letter to the respondent requesting a reply to the charges within twenty days. The respondent did not reply.

On August 5, 1991, Boucher commenced a civil suit against the respondent. On August 7, 1991, bar counsel sent a second letter to the respondent requesting a reply to the Boucher complaint within ten days. The respondent did not respond within ten days, but did respond within thirty days.

the process and a demonstrated desire to obstruct and impede Bar Counsel's inquiry into the Palubeckis and Boucher matters. Given that this was not the first time that the Respondent had dealt with Bar Counsel, his failure to cooperate can only be regarded as a willful disregard of his obligations as an attorney."

Additionally, the appeal panel agreed with the hearing committee's finding that the respondent had neglected the Palubeckis matter in violation of Canon 6, DR 6-101 (A) (3), and Canon 7, DR 7-101 (A) (1), (2), and (3), but that he had not neglected the Boucher matter.

The appeal panel recommended that the respondent's discipline be a six-month suspension from the practice of law.[3] The Board of Bar Overseers voted to adopt the appeal panel's report and its recommendation that an information be filed with this court recommending that the respondent be suspended from the practice of law for six months. The matter was argued before a single justice of this court. The single justice ordered that the respondent be publicly censured and that he pay costs to the board. It is from this order that bar counsel appeals.

In reviewing the judgment of the single justice, our inquiry is whether the sanction imposed is "markedly disparate" from sanctions imposed in similar cases. *Matter of Palmer,* 413 Mass. 33, 37-38 (1992), and cases cited. Considering, as we must, the cumulative effect of the respondent's prior misconduct, see *Matter of Saab,* 406 Mass. 315, 326-327 (1989), which includes two instances of discipline for failing to cooperate with bar counsel's investigations, we conclude that a public censure is markedly disparate in its leniency.

Public censure has been imposed in cases where a respondent's failure to cooperate with bar counsel was accompanied by another disciplinary violation, *Matter of Cohen,* 3 Mass. Att'y Discipline Rep. 43, 46 (1983); *Matter of Kelly,* 2 Mass. Att'y Discipline Rep. 133, 134 (1981), and where the

---

[3]One member of the appeal panel dissented on this point alone, believing that a public censure was the appropriate discipline.

failure to cooperate constituted the only disciplinary violation. *Matter of McDermott,* 6 Mass. Att'y Discipline Rep. 222, 224-225 (1989). In none of these cases did the respondent have a history of disciplinary violations. In the present case, by contrast, the respondent has a prior history of discipline, including two previous instances of discipline for failure to cooperate with bar counsel. Were he to receive a public censure, this prior history of misconduct would count for nothing. See *Matter of Dawkins,* 412 Mass. 90, 96 (1992).

Effective administration of bar disciplinary procedures depends on the cooperation of attorneys. Failure to cooperate reflects adversely on the attorney's fitness to practice law. See *Matter of Sondej,* 3 Mass. Att'y Discipline Rep. 183, 185 (1982). Without the cooperation of members of the bar, "[t]he limited resources of the Bar Counsel, which are made available at the expense of the attorneys of this Commonwealth [are] devoted unnecessarily to the pursuit of the attorney." *Cohen, supra* at 48. Moreover, a reluctance to impose serious sanctions in instances of repeated failures to cooperate sends a message to the public that grievances against attorneys are not treated seriously. *Id.* at 45-46.

The respondent was no stranger to disciplinary proceedings. His history of sanctions for failing to cooperate should have indicated to him the importance of cooperation. Clearly, it did not.[4] We conclude that, given the respondent's continued pattern of failing to cooperate with bar counsel and the fact that the present violation of rule 4:01, § 3, is coupled with neglect of a client matter, a suspension from the practice of law is the appropriate sanction.

The judgment ordering a public censure is reversed. A judgment suspending the respondent from the practice of law

---

[4]Unlike the hearing committee, we do not perceive an attorney's duty to cooperate to be satisfied by *any* contact with bar counsel. Although the respondent did go through periods of communication with bar counsel, the numerous instances where, with no excuse or explanation, he ignored notices and meetings, that required bar counsel to expend additional effort and funds, cannot be ignored.

for six months and ordering him to pay costs to the board in the amount of $1,713.72 shall be entered.

*So ordered.*