IN THE MATTER OF RICHARD C. CHAMBERS.

Suffolk. October 5, 1995. - November 7, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, GREANEY, & FRIED, JJ.

*Attorney at Law*, Disciplinary proceeding, Public censure, Suspension.

In the circumstances of a petition for discipline of an attorney, a public
censure was markedly disparate from sanctions imposed in similar cases
and, in the absence of mitigating factors and in light of the attorney's
history of prior misconduct and failure to cooperate with bar counsel,
public censure did not reflect the increment of escalating severity that
was warranted: the appropriate sanction was a six-month suspension of
the attorney from the practice of law. [259-261]

INFORMATION filed in the Supreme Judicial Court for the
county of Suffolk on July 15, 1994.

The case was heard by *Nolan, J.*

*Michael Fredrickson* for the Board of Bar Overseers.

The respondent, pro se.

LYNCH, J. This is an appeal from an order of a single jus-
tice, acting on an information filed by the Board of Bar
Overseers (board), publicly censuring Richard C. Chambers
(respondent) for professional misconduct. The board appeals,
arguing that a public censure is a markedly lenient and dis-
parate sanction where the respondent neglected a client's
case, failed to cooperate with bar counsel's investigations,
and had a disciplinary history of similar offenses.

Bar counsel filed a petition for discipline and stipulation of
the parties on April 19, 1994. In the stipulation, bar counsel
and the respondent recommended to the board that public
censure was the appropriate measure of discipline. They also
agreed, however, that the board was not bound by the par-
ties' recommendation for discipline. Finally, each party
agreed to be bound by the stipulation of facts regardless of

the discipline recommended by the board or imposed by this court.

The board voted unanimously on June 13, 1994, to accept the stipulation of the parties but to reject their suggested discipline and instead recommended that the respondent be suspended from the practice of law for six months.

The stipulated facts show the following. The respondent neglected a client in a criminal matter by failing to pursue diligently his client's appeal such that the appeal was not docketed until after the client had served his entire sentence; by failing to maintain reasonable communications with his client; and by representing to the client, his father, and a friend of the client that he would try to have the client released by dates certain when he knew that he had no plan in mind that would likely lead to that result. We set out in detail the relevant stipulated facts in the margin.[1] Furthermore,

---

[1]The respondent was admitted to practice law in Massachusetts on November 28, 1969. Between 1969, and June 1985, the respondent was employed by his father-in-law. In December, 1984, a client retained the respondent's father-in-law to defend him on cocaine trafficking charges. The client paid the respondent's father-in-law $5,200 between December, 1984, and March, 1985. Following his father-in-law's death in June, 1985, the respondent agreed to handle the client's case in the Superior Court in Middlesex County for $3,500.

After a jury trial in July, 1988, the client was convicted of cocaine trafficking in violation of G. L. c. 94C, § 32E (1994 ed.), and sentenced to from five to seven years' imprisonment at Massachusetts Correctional Institution at Cedar Junction. In July or August, 1988, the respondent agreed to represent the client in an appeal from his conviction. The respondent received $1,000 from the client's father. The respondent filed a notice of appeal on August 26, 1988. Most of the transcripts were filed with the Superior Court by November, 1989. The transcripts for two dates, however, were not filed by the stenographer until October, 1992, seven months after the client was released from prison after serving his sentence.

Between August, 1988, and 1990, the respondent made little or no effort to bring about the filing of the missing transcripts. In February, 1990, the client learned that his appeal was being delayed because the transcripts were incomplete. He told the respondent that the delay violated his right to due process and asked the respondent to pursue the claim. The respondent promised to investigate the matter.

Between February, 1990, and December, 1991, the respondent took no action of substance to remedy the stenographer's delay in preparing the transcripts. On various occasions in 1991, the respondent represented to

the respondent failed repeatedly to comply with bar counsel's requests for information during the course of the disciplinary investigation. The facts relating to failure to cooperate are also set out in the margin.[2] The respondent agreed that by

---

the client, his father, and a friend of the client that he was preparing and filing a motion under Mass. R. Crim. P. 29, 378 Mass. 899 (1979), to revise the sentence and a motion pursuant to Mass. R. Crim. P. 30, 378 Mass. 900 (1979), for the client's release from custody, dismissal of the indictment, or correction of the sentence. The respondent did not prepare such motions until about September, 1991, when he gave copies of the motions to the client's father and told the client, the client's father, and the client's friend that he would try to have the client released before Thanksgiving. The respondent eventually determined that the motions he had prepared would be ineffective and so he never filed them with the court. He took no other action of substance in the fall of 1991 to obtain the client's release or to secure any other remedy for the delay in filing the transcript. Nevertheless, when Thanksgiving passed and the client was still incarcerated, the respondent told the client, the client's father, and the client's friend that he would try to have the client out by Christmas.

During 1991, the client attempted to contact the respondent on numerous occasions to find out the status of the motions the respondent purported to have prepared and filed with the court. The respondent failed to maintain reasonable communication with the client and failed on several occasions to respond to this client's reasonable requests for information.

On December 17, 1991, the client discharged the respondent and requested the return of the $1,000 fee. The respondent did not reply to the client's correspondence, did not return the fee, and did not provide an accounting of the services he had provided in return for the fee.

[2]On January 14, 1992, bar counsel sent to the respondent a letter with a request for investigation filed by the client. In the letter, bar counsel requested that the respondent reply to the allegations in the client's request for investigation within twenty days of January 14, 1992. Although the respondent received this correspondence, he failed to reply within twenty days or request a continuance.

On February 11, 1992, bar counsel sent a certified letter to the respondent enclosing the prior correspondence and requesting that the respondent reply within ten days of February 11, 1992. The respondent replied to this correspondence.

On March 2, 1992, bar counsel asked the respondent to provide copies of the motions referred to in the respondent's reply letter within ten days of March 2, 1992. The respondent failed to respond or to request a continuance.

On March 24, 1992, bar counsel sent a copy of the March 2 correspondence to the respondent by certified mail and directed the respondent to

these actions he had violated several disciplinary rules and ethical canons.[3]

In addition, the respondent has a history of prior misconduct. He was publicly censured in 1987 for neglecting three clients in civil matters, lending funds to a client, and failing to respond to bar counsel's inquiries. See *Matter of Chambers*, 5 Mass. Att'y Discipline Rep. 56 (1987). He also received two informal admonitions, also for neglect of clients, in 1976 and 1981.

In reviewing the judgment of the single justice, the court's inquiry is "whether the sanction imposed is markedly disparate from sanctions imposed in similar cases." *Matter of Garabedian*, 416 Mass. 20, 24 (1993). See *Matter of Tobin*, 417 Mass. 81, 88 (1994). In *Matter of Garabedian, supra* at 24, we concluded that the sanction of public censure was, under the facts of that case, "markedly disparate in its leni-

---

provide the information no later than ten days from March 24, 1992. The respondent provided the requested information on April 7, 1992.

On April 8, 1992, bar counsel wrote to the respondent to request information to be provided by April 22, 1992. On April 22, 1992, the respondent sent a letter providing some, but not all of the information. He promised to send the missing information, including certain receipts, checks, and the names of certain clerks, but did not do so.

On October 7, 1992, bar counsel wrote to the respondent to remind him that he had promised to provide the missing information but had failed to do so. Bar counsel directed the respondent to provide the information by October 16, 1992. The respondent did not provide the information by October 16, and he did not request a continuance.

On October 22, 1992, a reviewing board member of the board issued a subpoena for the respondent's appearance on November 4, 1992, and the production of various documents. The respondent was served with the subpoena on October 28, 1992. On that same date, the respondent wrote to bar counsel to reply to the October 7, 1992, correspondence.

[3]The respondent stipulated that he had violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6), as appearing in 382 Mass. 769 (1981); S.J.C. Rule 3:07, Canon 6, DR 6-101 (A) (3), as appearing in 382 Mass. 783 (1981); and S.J.C. Rule 3:07, Canon 7, DR-7-101 (A) (1), (2), and (3), as appearing in 382 Mass. 784 (1981), by neglecting his client's case. He also agreed that he violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5) and (6), as appearing in 382 Mass. 769 (1981) and S.J.C. Rule 4:01, § 3 (b), as appearing in 415 Mass. 1302 (1993), by failing to cooperate with bar counsel's investigation.

ency." In particular, we noted that the respondent attorney had a history of prior misconduct and had failed to cooperate with bar counsel. In light of this history, we concluded that a greater penalty than public censure was appropriate and approved the board's recommendation of a six-month suspension. *Id.* at 25.

The instant case is closely analogous to *Matter of Garabedian, supra.* There is no indication in the record that any special mitigating circumstances exist. Cf. *Matter of Poisson,* 9 Mass. Att'y Discipline Rep. 260 (1993); *Matter of Akram,* 8 Mass. Att'y Discipline Rep. 1 (1992); *Matter of Wade,* 5 Mass. Att'y Discipline Rep. 386 (1987); *Matter of Tully,* 5 Mass. Att'y Discipline Rep. 373 (1986).[4] Instead, the respondent engaged in aggravated neglect of a client's case, the same type of misconduct involved in three prior disciplinary proceedings, including one that led to a public censure. Moreover, the respondent's failure to cooperate with bar counsel in this and at least one prior investigation "reflects adversely on the attorney's fitness to practice law." *Matter of Garabedian, supra* at 25.

Furthermore, in the absence of mitigating factors, discipline should proceed in increments of escalating severity. See *Matter of Provanzano,* 5 Mass. Att'y Discipline Rep. 300, 305-306 (1987). Thus, we agree with the board that a six-month suspension is appropriate discipline.

The respondent argues that we should defer to bar counsel's recommendation that public censure was the appropriate measure of discipline. On the contrary, the agreement of the respondent and bar counsel to recommend a lesser penalty "has no influence on our reasoning." *Matter of Luongo,* 416 Mass. 308, 312 (1993). As we stated in a similar context:

---

[4]The respondent in his brief (and at oral argument) referred to purported facts not in the record to support his theory of mitigation. The board subsequently filed a motion to strike the respondent's brief. As to those portions of respondent's brief which refer to facts not in the record, the board's motion to strike is hereby allowed.

"Our object is to impose the appropriate discipline. Neither this court nor the Board should give special force to recommendations of Bar Counsel as to the level of discipline because they are presented in conjunction with a joint stipulation of facts. The discretionary authority of this court and the Board cannot properly be restricted by the circumstances of the stipulation. It may be that the failure of the Board to follow such joint recommendations will cause attorneys to decline to take the risk of entering into stipulations in the future. But the attorney agreed to the arrangement that is presented to us. He obtained from Bar Counsel a recommendation more favorable to him than the Board or we could accept."

*Id.* at 313.

Accordingly, we reverse the judgment ordering a public censure and direct that a judgment suspending the respondent from the practice of law for six months be entered.

*So ordered.*