IN THE MATTER OF JOHN D. FRANCHITTO. January 25, 2007. *Attorney at Law,* Disciplinary proceeding, Public reprimand.

Bar counsel appeals from a judgment of a single justice of this court publicly reprimanding the respondent, John D. Franchitto. We affirm.

---

*Background.* Bar counsel filed a petition for discipline alleging that Franchitto violated disciplinary rules by making disbursements in three residential mortgage closings without good funds for one client and subsequently conducting closings for other clients without informing participants that his disbursement checks could be dishonored because of account shortfalls stemming from the unfunded closings. A hearing committee appointed by the Board of Bar Overseers (board) found that Franchitto was the victim of his client's (the mortgage lender's) fraud, but nonetheless that he violated the good funds statute, G. L. c. 183, § 63B, and record-keeping provisions of the Rules of Professional Conduct. Mass. R. Prof. C. 1.15 (a), 426 Mass. 1363 (1998). The committee also concluded that Franchitto had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998), by failing to disclose the account shortfalls at the subsequent closings. As a sanction, the committee recommended a public reprimand. Both parties appealed to a panel of the board, which recommended the same sanction. The full board adopted the panel's report and recommendation. Bar counsel objected to the sanction. An information was filed by the board and heard by the single justice, who imposed a public reprimand. On appeal, bar counsel argues that the sanction improperly deviates from the presumptive sanctions set forth in *Matter of Schoepfer*, 426 Mass. 183 (1997), and *Matter of the Discipline of an Attorney*, 392 Mass. 827 (1984) (*Three Attorneys*). Further, bar counsel points out that Franchitto was previously suspended from the practice of law and argues that he should be suspended again under the principle that "in the absence of mitigating factors, discipline should proceed in increments of escalating severity." *Matter of Chambers*, 421 Mass. 256, 260 (1995).

*Discussion.* "In reviewing the disciplinary sanction imposed by a single justice, we 'inquire whether the judgment is markedly disparate from those ordinarily entered by the various single justices in similar cases.' " *Matter of Jackman*, 444 Mass. 1013, 1013 (2005), quoting *Matter of Alter*, 389 Mass. 153, 156 (1983). Nonetheless, "[e]ach case must be decided on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Three Attorneys, supra* at 837. "Our review 'is de novo, but tempered with substantial deference to the board's recommendation.' " *Matter of Jackman, supra*, quoting *Matter of Foley*, 439 Mass. 324, 333 (2003).

The presumptive sanctions set forth in *Three Attorneys, supra*, and reaffirmed in *Matter of Schoepfer, supra*, have been applied in cases of commingling client funds with the attorney's funds or of intentional misuse of client funds for the attorney's own purposes. *Matter of Schoepfer, supra* at 185 n.2 (listing presumptive sanctions for "intentional commingling" and "intentional use"). See, e.g., *Matter of Dragon*, 440 Mass. 1023 (2003) (affirming presumptive sanction of disbarment where attorney intentionally commingled clients' funds with his own, with actual deprivation resulting). Here, parties (not Franchitto's clients) were actually deprived of funds, albeit temporarily, due to a substantial shortfall in Franchitto's IOLTA account. Bar counsel argues that a suspension is therefore warranted. However, the hearing committee, whose factual findings have not been disputed, found no com-

mingling of funds and no intentional misuse of client funds.[1] Rather, Franchitto was defrauded by his client, which failed to fund the loans that it had engaged him to close. It sent checks that, unknown to Franchitto, did not satisfy the good funds statute, and then it stopped payment on them. Franchitto was unaware of the resulting deficit in his IOLTA account until after those closings had occurred. Later, after it should have been clear that the client was not going to provide replacement funds, and knowing that he had a deficit, he nonetheless conducted two additional closings for different clients (also mortgage lenders), and went to great, but unsuccessful, efforts to replace the funds in some other way. Because he had received funds for those closings, he could not have properly refused to perform the closings and disburse the funds. However, he failed to inform the participants of the deficit in his IOLTA account and the risk that there would be insufficient funds to pay these disbursements. It does not appear that Franchitto in any way profited from his violations. Cf. *Matter of Lupo*, 447 Mass. 345, 359 (2006), citing *Matter of Schoepfer, supra* at 186 (indefinite suspension warranted for "intentional misrepresentations that inured to [attorney's] financial benefit"; this misconduct held similar to intentional deprivation of client funds because "[i]n both cases the attorney benefits financially from his misdeeds at the expense of clients"). The hearing committee, the appeal panel, and the single justice all regarded Franchitto's ethical violations as lapses of judgment committed under stressful circumstances. After reviewing the record, we agree.

On its facts, this case is more like *Matter of Askenase*, 18 Mass. Att'y Discipline Rep. 35 (2002), than like any of the cases relied on by bar counsel in which the attorneys' misuse of client funds was intentional, repeated, or compounded by other serious misconduct. E.g., *Matter of Soutter*, 17 Mass. Att'y Discipline Rep. 524 (2001) (suspension of one year and one day for repeated misuse, over eight-year period, of client funds in IOLTA account for another client's benefit, along with misrepresentations on HUD-1 form and conflicts of interest). In *Matter of Askenase, supra* at 35, the attorney's client was engaged in a scheme of buying property at one closing, then selling it for a higher price at a second closing the same day. The client would, in fact, bring no funds to the first closing. *Id.* at 35-36. The attorney would nonetheless tender a check from his IOLTA account, knowing that the client had not yet provided the funds to cover it. *Id.* at 36. The client would then use the proceeds from the second closing to fund her purchase of the property at the first closing. *Id.* at 35-36. As the appeals panel in this case noted, the scheme worked marvelously six times, but then failed the seventh time, when the second closing did not occur. *Id.* The parties stipulated to the facts and jointly recommended a public reprimand, which the board accepted. *Id.* at 37. If anything, Franchitto's isolated and unwitting participation in his client's fraudulent scheme is less culpable than the attorney's knowing and repeated misconduct in the *Askenase* case. The term suspension of one year and one day urged by bar counsel would certainly be "markedly disparate" from the public reprimand imposed in that case. *Matter of Alter, supra*.

Bar counsel further argues that Franchitto's prior suspension warrants the

---

[1]Bar counsel contends that Franchitto converted client funds by using a given client's funds to make disbursements for the benefit of another client. We reject this contention. To the extent that Franchitto ever used one client's funds for the benefit of another, the board's well-supported findings plainly show that such use was unintentional.

imposition of a longer suspension in this case under the principle of escalating discipline. The hearing committee, the appeal panel, and the single justice all considered the prior misconduct and sanction and concluded that a suspension was nonetheless not appropriate.[2] The circumstances of this case included significant special mitigating factors.[3] See *Matter of Chambers, supra* (discipline should escalate "in the absence of mitigating factors"). As the hearing committee found, his violations were not motivated by inappropriate self-interest. Further, he alerted banking authorities in Massachusetts and New York about his client's fraudulent scheme. The hearing committee found this conduct to be "instrumental" in the authorities' taking action against the client and in limiting the potential harm to others. Franchitto also, on his own initiative, actively participated in securing restitution for the third parties who were temporarily deprived of funds, both by immediately (but unsuccessfully) seeking a personal loan of $800,000 to cover the IOLTA deficit and by promptly seeking help from his malpractice and title insurance carriers. Perhaps most commendably, Franchitto himself brought his own conduct to the attention of the board. After considering all the circumstances, we conclude that a suspension of one year and one day is manifestly inappropriate. For Franchitto's lapses in judgment, which temporarily deprived the parties of their funds, we agree with the hearing committee, the appeal panel, and the single justice that a public reprimand is the most appropriate sanction.

*Judgment affirmed.*

*Terence M. Troyer*, Assistant Bar Counsel.
*Robert Wolkon* for the respondent.

---

[2]Indeed, in the hearing committee's view, Franchitto's conduct warranted only a private admonition, but for the aggravating circumstance of the prior misconduct.

[3]Because of those mitigating factors, we need not decide whether, as Franchitto argues, bar counsel has misinterpreted the principle of escalating discipline to require that a subsequent sanction always exceed a prior one, even if the prior misconduct was very serious and the subsequent misconduct very minor.

