IN THE MATTER OF JAMES F. SCOLA. July 15, 2011. *Attorney at Law*, Disciplinary proceeding, Suspension.

Bar counsel appeals from a judgment of a single justice of this court publicly reprimanding the respondent, James F. Scola. At issue is the proper sanction. As we shall explain, we believe that Scola's conduct warrants a term suspension, which shall be stayed subject to certain conditions.

*Background.* The facts, as found by the hearing committee and recited by the single justice, are well supported by the record and are not in dispute. Scola was admitted to the practice of law in 1985. Starting in about 2000, Scola concentrated his practice in handling real estate closings on behalf of lenders. In that practice, he used an IOLTA account that had been opened in 1999 (old IOLTA account). In 2004, Scola moved the old IOLTA account to Commerce Bank. At that time, however, unbeknownst to Scola, the account was underfunded due to the nonreceipt of funds for a certain transaction. As a result, Scola was inadvertently misusing client funds by paying costs associated with one client's real estate closing before the funds were received for that closing, because the old IOLTA account in total had sufficient money to pay such costs based on receipts from other clients. The hearing committee found that, during this time frame, Scola was not aware that he was using one client's funds to pay the expenses for another's closing. The board expressly found that there was no commingling.

At the time of the initial underfunding, Scola was engaged in a real estate transaction practice in which he performed between thirty and seventy-five closings each month. He used a computer "software package" for real estate conveyancing (SoftPro) that, in addition to other functions, managed the financial aspects of each client's transaction. SoftPro generated the required Federal forms, including the HUD-1 settlement form showing all amounts due from, or payable to, any party to the transaction, or any third party, at closing. Scola testified that he believed the software package would not allow him to generate checks for closing payments if there were insufficient funds available.

Bar counsel initially asked Scola to examine his old IOLTA account when a check written on that account was returned for insufficient funds in April,

2006. Scola investigated the issue, notified bar counsel that he had hired an independent accountant to manage his books and to reconcile his accounts, and later determined that the shortfall was the result of specific overpayments. He commenced efforts to recover the amounts and informed bar counsel of these actions.

In February, 2007, a second check written from the old IOLTA account was returned for insufficient funds. Scola investigated and determined that the shortfall was the result of a lender's failure to wire payment for a particular closing. The lender went out of business on the day of the closing and never paid the funds. Scola attempted to resolve the problem in a timely manner but has never collected the money from the lender. The seller involved has refused to rescind the transaction.

Scola erroneously believed that these investigations had reached the root of the issue with his old IOLTA account. This was not the case. The true source of the problem arose in 2004, over four years prior to the first returned check, when a transaction was not funded. This was discovered only after a long and costly forensic audit.

Scola became aware of the larger issues with his old IOLTA account as a result of bar counsel's investigation. During this investigation, Scola continued to use the account, and the hearing committee found that this was reasonable in the circumstances. However, as a result of the forensic audit, bar counsel determined that the old IOLTA account could not be reconciled and had to be closed. On January 24, 2008, bar counsel sent a letter to Scola instructing him to close the account. Bar counsel also advised him of the contents of the letter by a telephone call. Scola continued to use the old IOLTA account for new closings until March 14, 2008, at which point he opened and began using a new IOLTA account at the same bank. During the period that Scola was continuing to use the old IOLTA account, there were two cases in which he conducted refinance closings without sufficient funds, resulting in temporary deprivation.

The hearing committee found that it was reasonable for Scola to continue to use the old IOLTA account during the investigation by bar counsel, and that bar counsel had told him to continue doing so. The hearing committee recognized that, at whatever time Scola closed the old IOLTA account, one or more of his clients would face deprivation. The hearing committee rejected bar counsel's argument that Scola kept the account open to obtain some additional benefit for himself.

The hearing committee made several other findings favorable to Scola, all of which are well supported by the record. It found that the errors in accounting were not intentional, that Scola did not commingle funds, and that he did not take money from the old IOLTA account for his own use or benefit. Scola acted in the good faith belief that the software package appropriately balanced the funds available and would not allow him to generate checks if the funds were not available. Scola also complied with all conditions imposed during the investigation; he expressed sincere remorse; he "used extraordinary efforts to personally make full restitution"; he was unlikely to repeat the misconduct; and his new IOLTA account has been in balance since it was opened.

The hearing committee also found, however, that Scola improperly failed to close the old IOLTA account after bar counsel's January 24, 2008, letter directing him to do so, and that he did not close the account until March 14,

2008. Therefore, the committee found that Scola intentionally misused funds in the old IOLTA account for the closings that took place during that period and, when Scola did stop using the old IOLTA account, certain payments made at closings for two clients were returned for insufficient funds.

Based on these facts, the hearing committee concluded that Scola violated several provisions of the Massachusetts Rules of Professional Conduct. It found that these violations were largely the result of negligent record-keeping. While the committee found that Scola knowingly misused client funds, failed to advise lenders that the old IOLTA account was in deficit, instructed lenders to deposit funds into the old IOLTA account knowing that it had a deficit, and intentionally issued checks that he knew would be dishonored due to insufficient funds, the committee limited these particular violations to the period *after* bar counsel told Scola to stop using the account. Scola does not contest the conclusion that he committed each of the violations found by the committee.

As to the sanction, the hearing committee rejected both bar counsel's request for an indefinite suspension and Scola's request for a public reprimand on the ground that Scola's conduct was, in its view, less serious than that in the cases cited by bar counsel but more serious than that in the cases cited by Scola. The committee recommended a term suspension of one year. The Board of Bar Overseers (board) adopted the committee's findings of fact, conclusions of law, and proposed sanction. The single justice, however, concluded after a hearing that the appropriate sanction was a public reprimand.

*Discussion.* The sole issue on appeal is the appropriate sanction: Should Scola receive, as the single justice concluded, a public reprimand or, as the board recommended and as bar counsel now argues, a term suspension (and if the latter, of what length)?[1] "In reviewing the disciplinary sanction imposed by a single justice, we 'inquire whether the judgment is markedly disparate from those ordinarily entered by the various single justices in similar cases.' " *Matter of Franchitto*, 448 Mass. 1007, 1008 (2007), quoting *Matter of Jackman*, 444 Mass. 1013, 1013 (2005). "Our review 'is de novo, but tempered with substantial deference to the board's recommendation.' " *Matter of Franchitto, supra*, quoting *Matter of Jackman, supra*. Here, the single justice rejected the board's recommendation on the ground that, in her view, Scola's conduct had not been shown to be more egregious than the conduct of the attorneys in *Matter of Franchitto, supra*, and *Matter of Askenase*, 18 Mass. Att'y Discipline Rep. 35 (2002). Accordingly, she concluded that the sanction imposed in those cases, a public reprimand, was proper in this case.

The problems with Scola's old IOLTA account all stem from inadequate record-keeping dating back to 2004. Scola, having erroneously relied on his software package to keep the account balanced, was unaware of the fundamental problem with the account for years. Simply put, he was unknowingly using

---

[1]Bar counsel also persists in arguing that Scola's conduct warrants the presumptive sanction of indefinite suspension or disbarment, based on cases such as *Matter of Schoepfer*, 426 Mass. 183 (1997), because Scola intentionally misused trust funds, with deprivation resulting. The hearing committee, the board, and the single justice all rejected such a sanction as unduly harsh. We agree with the single justice that Scola's misconduct, rooted in negligent — but not dishonest — record-keeping and involving no use of client funds for his own benefit, bears no resemblance to the facts of the *Schoepfer* case. See *id.* at 184 (attorney intentionally commingled funds and used client funds for his own expenses).

the "float" on the account during this time, allowing one client's funds to be used to meet another's obligations. His behavior became intentional only during the last few weeks of the account's existence, when he continued to use the account knowing that bar counsel had instructed him to close it. Even then, as the single justice noted, Scola was seeking legal counsel at this time, as closing the account at any time would inevitably result in deprivation to at least one client, and he personally gained nothing by his conduct. He did not commingle funds; he did not use client funds for his own benefit; and he committed no fraud. In comparison, in *Matter of Franchitto, supra*, the attorney was unaware of a deficit in his IOLTA account, due to fraud committed by his client, with the result that two real estate closings went unfunded. In *Matter of Askenase, supra*, the attorney knowingly participated in his client's scheme of buying property with an unfunded check, which would only be funded with the proceeds of a later sale of the same property. In each of these cases, the attorney was publicly reprimanded. Indeed, in *Franchitto*, we specifically rejected a term suspension as markedly disparate from the sanction imposed in the *Askenase* case. *Matter of Franchitto, supra* at 1009. In contrast, the cases relied on by bar counsel, in which term suspensions of two years or more were imposed, generally involve more serious violations, often compounded by other misconduct. See *Matter of Jackman, supra* at 1013 (attorney did not intentionally misappropriate funds; nonlawyer staff member engaged in unauthorized practice of law and converted client funds); *Matter of Newton*, 12 Mass. Att'y Discipline Rep. 351 (1996) (attorney commingled multiple clients' funds with business and personal funds); *Matter of Zelman*, 10 Mass. Att'y Discipline Rep. 302 (1994) (attorney commingled funds by failing to withdraw earned fees and used funds collected for client and another creditor after two previous informal admonitions for neglect; term suspension jointly recommended by attorney and bar counsel); *Matter of Barnes*, 8 Mass. Att'y Discipline Rep. 8 (1992) (attorney commingled and misused funds, made misrepresentation to client, and signed client's name to check without authority). We find that Scola's conduct, while not so culpable as the attorneys' conduct in these cases, was more culpable than that described in the *Franchitto* and *Askenase* cases.

In our judgment, neither a public reprimand nor a lengthy suspension is appropriate. A suspension of six months is warranted and would not be "markedly disparate" from the sanctions imposed in comparable cases. Moreover, in light of the significant mitigating factors, we shall stay Scola's suspension for a one-year probationary period, with the following conditions: that Scola continue to keep his current IOLTA account in balance, that he submit to an audit of his current IOLTA account after six months and again at the end of the probationary period, and that he commit no further violations of the Massachusetts Rules of Professional Conduct. On Scola's satisfactory completion of the probationary period, the suspension shall be deemed served.

*Conclusion.* The matter is remanded to the county court, where a judgment shall enter suspending Scola from the practice of law for six months, the suspension to be stayed for a one-year probationary period as set forth in this opinion.

*So ordered.*

*Constance V. Vecchione*, Bar Counsel.
*James F. Scola*, pro se.