SUPREME JUDICIAL COURT 
 
 IN THE MATTER OF JUDITH C. KNIGHT

 
 Docket:
 SJC-13612
 
 
 Dates:
 April 29, 2025
 
 
 Present:
 
 
 
 County:
 
 

 
 Keywords:
 Attorney at Law, Disciplinary proceeding, Suspension, Client funds, Misuse of client funds, Attorney-client relationship. Board of Bar Overseers.
 
 

  
      The respondent attorney, Judith C. Knight, appeals from an order of a single justice of this court suspending her from the practice of law for two years, based on findings that she intentionally misused unearned retainer funds and engaged in other misconduct.  As discussed in more detail below, we affirm the order of suspension.
           1.  Procedural background.  On June 30, 2021, bar counsel filed a four-count petition for discipline against the respondent, alleging various violations of the rules of professional conduct.[1]  The first count concerned the respondent's failure to cooperate with bar counsel's investigation, as well as her failure to maintain proper record-keeping with respect to an Interest on Lawyers' Trust Account (IOLTA account).  The remaining three counts corresponded to misconduct in each of three separate client matters.  That misconduct involved, inter alia, the respondent's withdrawal of fees from her IOLTA account without first delivering invoices to the clients and her intentional misuse of unearned retainer funds, resulting in one instance of deprivation.
           The respondent filed an answer, and later, an amended answer, through counsel; however, she subsequently proceeded pro se after her counsel's withdrawal on February 17, 2022.  A hearing committee of the Board of Bar Overseers (board) held a four-day evidentiary hearing in November 2022, at which four witnesses testified and ninety-six exhibits were admitted.  Bar counsel argued that the respondent's misconduct warranted a three-year suspension, while the respondent advocated for a private admonition.  On August 8, 2023, the hearing committee issued its report, concluding that bar counsel had proved the charged rule violations and recommending that the respondent be suspended from the practice of law for a period of two years.  On September 11, 2023, the board unanimously voted to adopt the hearing committee's report and recommendation.[2]
           The board thereafter filed an information in the county court pursuant to S.J.C. Rule 4:01, § 8 (6), as appearing in 453 Mass. 1310 (2009).  A single justice of this court held a hearing, at which the respondent appeared pro se.[3]  At the conclusion of the hearing, the single justice made oral findings that there was substantial evidence to support the hearing committee's findings and imposed the board-recommended sanction of a two-year term of suspension.  This appeal followed.
           2.  Factual background.  We summarize the relevant factual findings of the hearing committee, as adopted by the board.  Upon review of the board's findings, we agree with the single justice that these facts are supported by substantial evidence.  See S.J.C. Rule 4:01, § 8 (6).
           a.  Count one.  Count one charged the respondent with failing to cooperate with bar counsel's investigation and failing to maintain various records in connection with her IOLTA account.  The underlying investigation began in 2019, after bar counsel was notified of dishonored electronic withdrawals of funds from the respondent's IOLTA account.  The hearing committee found that, in the months that followed, the respondent ignored bar counsel's requests for information, "missing deadline after deadline" to respond.  As a result, bar counsel filed a petition to administratively suspend the respondent for her failure to cooperate.  That petition was granted, and the respondent was not reinstated until February 26, 2020, after certifying her compliance with bar counsel's requests for documentation.  As the hearing committee further found, bar counsel's subsequent investigation revealed that, from January 2018 through April 2021, the respondent did not maintain individual client ledgers for retainer funds, ledgers memorializing bank fees and charges for her IOLTA account, three-way reconciliation reports, or a chronological check register for each transaction in her IOLTA account.[4]
            b.  Count two.  Count two concerned the respondent's brief representation of a client (client A) in divorce proceedings.  The respondent met with client A for an initial consultation on September 16, 2019.  At the meeting, they orally agreed to a fee arrangement in which client A would provide an advance retainer that the respondent would bill against.  The respondent told client A that he would also be responsible for a "bank fee" of approximately thirty dollars, but ultimately charged client A an additional $200, without informing him, to cover the processing fee of $126.05 for charging the retainer to his credit card.
           Two days later, on September 18, 2019, the respondent paid herself nearly all the funds from client A's retainer, despite the fact that she knew she had earned only a portion of that amount.  Shortly thereafter, client A terminated the respondent's legal services and sent a series of messages requesting an invoice, as well as a refund of the unearned portion of the retainer.  The respondent ignored a number of these requests and later responded by telling client A that she could not complete the invoice until she was permitted to withdraw from the case.
           On October 16, 2019, client A notified his credit card company that he disputed the respondent's charge to his credit card for the retainer funds (which was $200 more than the retainer amount that client A had agreed to pay), and the credit card company initiated a "chargeback" request.  After learning of the chargeback request, the respondent finally prepared an invoice concerning the work she had performed in client A's case and submitted it to the credit card company.  Even then, she did not provide a copy of the invoice to client A, and the hearing committee found that this was likely because the respondent knew she had not earned all the fees charged.
           The credit card company ultimately denied client A's dispute, and the hearing committee found that, with one exception, bar counsel failed to prove that the respondent did not eventually earn the funds she had charged to client A.  That exception concerned the initial consultation, for which the respondent conceded that she had "mistakenly overcharged" client A.  More specifically, on or around November 1, 2022 (immediately before the evidentiary hearing was scheduled to begin in this bar discipline matter), the respondent sent a letter to client A in which she admitted to overcharging him by $200[5] for the initial consultation and provided him with a check for $500.[6]  The hearing committee found that client A was thus deprived of at least $200 of the misused retainer funds.[7]
           c.  Count three.  Count three concerned the respondent's representation of another client (client B) at around the same time as client A.  As with client A, the respondent orally agreed on a fee arrangement with client B wherein the respondent would receive an advance retainer.  Over a one-month period, the respondent paid herself in excess of the entire retainer amount, despite the fact that she had not earned all those funds and had not prepared any invoices for client B.[8]  A few weeks after client B terminated the respondent's legal services, the respondent refunded the unearned fees to the client.  The hearing committee found that, as with client A, the respondent "knew precisely what she was doing, knew it was wrong, and proceeded nonetheless."[9]
           d.  Count four.  The final count concerns the respondent's representation of a subcontractor (client C) in a legal dispute with another subcontractor.  Within two weeks of being retained, the respondent paid herself nearly the entirety of the retainer provided by client C, despite having not yet earned most of the funds.  In subsequent months, the respondent repeatedly ignored e-mail messages from client C requesting invoices of the respondent's work thus far.  Almost a year passed before the respondent sent her first invoice, at which point she requested an additional retainer for future work.  Upon receipt of those funds, the respondent immediately deposited the full balance into her operating account, despite having not yet earned all those funds.
           The parties eventually negotiated a settlement agreement and notified the court.  The respondent did not inform client C of a deadline to file the executed settlement agreement, however, and sent a version of the settlement agreement to opposing counsel for final signature without client C's authorization.  When client C later instructed the respondent to make a number of changes, the respondent did not notify the client that she had already sent the settlement agreement to opposing counsel, or that it had already been signed by the opposing party.  Moreover, she failed to promptly transmit client C's requested changes to opposing counsel and ignored a number of e-mail messages from opposing counsel asking about the status of executing the settlement agreement.  Eventually, opposing counsel filed a motion to enforce the version of the settlement agreement that his client had signed.  The respondent did not notify client C of opposing counsel's motion, did not file an opposition to the motion, and did not attend the subsequent hearing at which the motion was heard.  That motion was allowed, but the respondent waited another two weeks before she informed client C that the final version of the settlement agreement would not contain the client's requested changes.  Even then, the respondent lied about the chronology of events to obfuscate her own responsibility as to the reason for this outcome.[10]
           3.  Sufficiency of the evidence.  On appeal, the respondent does not contest most of the factual findings adopted by the board and concedes that she engaged in professional misconduct.  She argues, however, that there was not substantial evidence to support the hearing committee's findings that (1) she did not cooperate with bar counsel's investigation; and (2) her misuse of client funds was intentional.  We consider each contention in turn.
            In assessing the sufficiency of the evidence, we uphold the subsidiary findings of the hearing committee, as adopted by the board, so long as those findings are supported by substantial evidence.  See S.J.C. Rule 4:01, § 18 (5), as appearing in 453 Mass. 1315 (2009).  In making this assessment, "[t]he hearing committee . . . is the sole judge of credibility, and arguments hinging on such determinations generally fall outside the proper scope of our review."  Matter of Diviacchi, 475 Mass. 1013, 1018-1019 (2016), quoting Matter of McBride, 449 Mass. 154, 161-162 (2007).
      a.  Failure to cooperate.  The respondent contests the hearing committee's finding that she did not cooperate with bar counsel's investigation on the basis that her conduct amounted to "delay, not outright refusal to cooperate or default."  However, as this court has previously noted, "we do not perceive an attorney's duty to cooperate to be satisfied by any contact with bar counsel" (emphasis in original).  Matter of Garabedian, 416 Mass. 20, 25 n.4 (1993).  Even where an attorney engages in some degree of communication, if the attorney "provide[s] no reasonable explanation for his [or her] repeated, knowing failure to comply with . . . numerous requests for cooperation," bar counsel is forced to expend its limited resources to pursue the matter further, "at the expense of the attorneys of this Commonwealth."  Matter of Cohen, 3 Mass. Att'y Discipline Rep. 43, 48 (1983).  See Matter of Garabedian, supra at 25.  In such instances, the attorney's failure to cooperate "cannot be ignored."  Id. at 25 & n.4 ("a reluctance to impose serious sanctions in instances of repeated failures to cooperate sends a message to the public that grievances against attorneys are not treated seriously").  Here, the record reflects that the respondent engaged in such a pattern of noncompliance until it resulted in her administrative suspension.
           In a letter dated November 4, 2019, bar counsel notified the respondent of its investigation and asked her to provide various records concerning her IOLTA account within twenty days.  The respondent ignored the letter, and bar counsel followed up one month later, and again three weeks after that.  Despite bar counsel extending the original deadline and following up multiple times, however, the respondent failed to provide any of the requested records or explain why she could not do so.  Only after bar counsel filed a petition for administrative suspension on January 16, 2020, did the respondent provide any responsive documents to bar counsel.  Even then, the respondent initially submitted a subset of the categories of documents requested, and for a shorter period than the six-month time frame bar counsel had specified.  It was not until late February 2020, weeks after the respondent's noncompliance resulted in her administrative suspension, that she finally provided the remaining documents responsive to bar counsel's original request.  Accordingly, because the record reflects "numerous instances where, with no excuse or explanation, [the respondent] ignored" bar counsel's requests for documentation, the board's finding that the respondent failed to cooperate is supported by substantial evidence.  Matter of Garabedian, 416 Mass. at 25 & n.4.
           b.  Intentionality of respondent's misconduct.  The respondent also asserts that her misuse of client funds should not be deemed intentional because she was unaware that she could not prepay herself for work that she had not yet performed.  As this court has long recognized, however, "[t]here have been, and will be, few cases of unethical conduct where we consider it relevant that an offending attorney was not aware of the disciplinary rules or their true import."  Matter of Hrones, 457 Mass. 844, 855 (2010), quoting Matter of the Discipline of an Attorney, 392 Mass. 827, 835 (1984).  Nor could this be such a case, given the ample evidence to support the hearing committee's finding that the respondent "knew precisely what she was doing, knew it was wrong, and proceeded nonetheless."
           As detailed above, the respondent repeatedly paid herself nearly all the funds from client retainers before earning those funds, across multiple client matters.  She did so despite acknowledging to bar counsel that retainer funds are client funds "to the extent that . . . I haven't earned [them] yet," and that she would not deviate from her normal practice of depositing retainer funds in her IOLTA account unless she had "already done a lot of work and [had] earned" the funds.  Indeed, she suggested that client C switch to a flat fee arrangement because, unlike a retainer fee arrangement, the "benefit to me is that . . . I am paid up sooner rather than later."  And finally, as the hearing committee observed, the respondent's misconduct came only a few years after she had attended a trust account class as part of a diversion agreement for prior misconduct that discussed the proper handling of client funds.  There was thus substantial evidence to support the hearing committee's findings.  See Matter of Mahlowitz, 37 Mass. Att'y Discipline Rep. 402, 412 (2021) (attorney need not operate with intent to deprive client of retainer funds to be found to have intentionally misused those funds).
           4.  Propriety of sanction.  We turn now to the two-year term of suspension recommended by the board and imposed by the single justice to determine whether it is "markedly disparate" from disciplinary sanctions imposed in comparable cases.  Matter of Hayes, 493 Mass. 1010, 1015 (2023).  On appeal, our review is "de novo in the sense that no special deference is given to the single justice's determination" (citation omitted).  Matter of Grayer, 483 Mass. 1013, 1018 (2019).  However, "like the single justice before us, [we] must be mindful that the board's recommendation is entitled to special deference" (citation and quotation omitted).  Id.
           Although the presumptive sanction for intentional misuse of traditional client funds is disbarment or indefinite suspension, we do not apply the same presumption in cases involving the intentional misuse of retainer funds with deprivation.  See Matter of Sharif, 459 Mass. 558, 566-568 (2011) (because misuse of retainer funds "may arise from errors of timing," i.e., withdrawing funds that "do not yet belong" to attorney, it differs "in severity from the misuse of client funds that will never belong to the attorney").  In such instances, the attorney's misconduct still warrants a severe sanction of disbarment, indefinite suspension, or a term suspension, but the appropriate choice of sanction will "depend[] on the facts of the case."  Id. at 566.  While the respondent did not act with an intent to deprive, her intentional misuse resulted in one instance of deprivation, for which a term of suspension remains appropriate.  See Matter of Kydd, 38 Mass. Att'y Discipline Rep. 250, 261-262 (2022) ("misconduct involving the misuse of retainers generally result[s] in a suspension of at least six months").  Cf. Matter of Jackman, 444 Mass. 1013, 1013–1014 (2005), and cases cited (even where an attorney engages in negligent, unintentional misuse of client funds that "has resulted in even temporary deprivation, a term suspension is typical").
           Here, the respondent's intentional misconduct was more egregious than the types of misconduct found in cases involving negligent misuse that have resulted in suspensions of no more than one year.  See, e.g., Matter of Pudlo, 460 Mass. 400, 406 (2011) (one-year suspension with six months stayed for negligent misuse of a retainer with deprivation and failure to keep records); Matter of Arthur, 33 Mass. Att'y Discipline Rep. 18, 18 (2017) (six-month suspension for commingling of client funds, negligent misuse, and failure to promptly turn over funds when due).  At the same time, as the hearing committee found, there are multiple factors that weigh in aggravation of the respondent's misconduct.  The respondent was admitted to the bar in 1988 and had substantial experience in the practice of law at the time of her misconduct.  See Matter of Cobb, 445 Mass. 452, 480 (2005) (substantial experience in law constitutes aggravating factor).  Moreover, the respondent demonstrated an inability to acknowledge or appreciate the nature of her wrongdoing in the proceedings below.  See id. (lack of insight constitutes aggravating factor).  In addition, the respondent's repeated, intentional misuse spanned multiple client matters and was accompanied by a variety of other rule violations, including the failure to cooperate with bar counsel, the failure to properly maintain IOLTA account records, and the failure to keep one client reasonably informed or act with reasonable diligence in that matter.  See Matter of Campbell, 37 Mass. Att'y Discipline Rep. 79, 82-83, 84 n.1 (2021) (three-year suspension for intentional misuse of retainer with deprivation, failure to provide diligent representation, failure to keep client reasonably informed, and failure to cooperate with bar counsel's investigation, aggravated by various factors, including lack of insight and substantial experience); Matter of Quigley, 36 Mass. Att'y Discipline Rep. 388, 388, 402-404 (2020) (three-year suspension for intentional misuse of unearned retainer funds, failure to pursue client objectives, failure to provide accounting for withdrawn retainer funds, and failure to cooperate with bar counsel's investigation).
           At the same time, we agree with the hearing committee that there are no factors to be weighed in mitigation.  Although the respondent provided medical records concerning a mental health diagnosis in 2019, she failed to demonstrate a causal connection between this diagnosis and the underlying misconduct, which continued well after she received effective treatment.  See Matter of Haese, 468 Mass. 1002, 1007-1008 (2014) ("Although we do not discount the severity of the respondent's medical conditions, it was his obligation to demonstrate a causal connection between the medical issues and the charged misconduct").  On balance, given the absence of mitigation, and in consideration of the factors weighed in aggravation discussed supra, the two-year term of suspension recommended by the board is appropriate.
      5.  Conclusion.  For the foregoing reasons, we affirm the order of the single justice suspending the respondent from the practice of law for a period of two years.
 
 
 
So ordered.
footnotes

      The case was submitted on the record, accompanied by a memorandum of law.
      Edward S. Cheng & Daniel S. Guenther for the respondent.
          [1] In instances where the current versions of the rules of professional conduct contain substantially the same language as those in effect during the events at issue, we refer to the current versions for the sake of simplicity.  See Matter of Ablitt, 486 Mass. 1011, 1013 n.5 (2021).
          [2] One member of the board recused himself from the discussion and vote.
               [3] Although the respondent was pro se in the proceedings below, she is represented by counsel in this appeal.
          [4] Based on this course of conduct, the hearing committee found that the respondent failed to cooperate with bar counsel's investigation, in violation of S.J.C. Rule 4:01, § 3, as amended, 430 Mass. 1314 (1999), and Mass. R. Prof. C. 8.1, as appearing in 471 Mass. 1479 (2015) (knowing failure to respond to lawful demand for information); Mass. R. Prof. C. 8.4 (g), as appearing in 471 Mass. 1483 (2015) (failure to cooperate with bar counsel, absent good cause); and rule 8.4 (h) (conduct that adversely reflects on fitness to practice).  The hearing committee further found that the respondent failed to maintain proper record-keeping, in violation of Mass. R. Prof. C. 1.15 (f) (1) (B), as amended, 490 Mass. 1306 (2022) (check register record-keeping requirements); rule 1.15 (f) (1) (C) (client ledger record-keeping requirements); rule 1.15 (f) (1) (D) (bank fee ledger requirements); and rule 1.15 (f) (1) (E) (reconciliation requirements).
          [5] This amount was based on the fact that the respondent had promised client A that she would charge a flat fee of $250 for an initial consultation of up to one and one-half hours.  The respondent testified that the consultation lasted two and one-half hours and that she billed him for the additional hour at a rate of $300, but her invoice reflects that she charged him for the entire meeting time at her hourly rate, for a total of $750.
               [6] At the evidentiary hearing, client A testified that he had not received the letter or the check.
          [7] Based on this course of conduct, the hearing committee found that the respondent violated Mass. R. Prof. C. 1.5 (b) (1), as appearing in 463 Mass. 1302 (2012) (communication in writing of scope of representation and fee to be charged); Mass. R. Prof. C. 1.4 (b), as appearing in 471 Mass. 1319 (2015) (explaining matter to extent necessary for client to make informed decision); Mass. R. Prof. C. 1.15 (d) (2) (providing itemized bill on or before date of withdrawal of funds); rule 1.15 (b) (safeguard and segregate trust property); Mass. R. Prof. C. 1.16 (d), as amended, 480 Mass. 1315 (2018) (refund of unearned advance payments upon termination); rule 8.4 (c) (conduct involving dishonesty, fraud, deceit, or misrepresentation); rule 8.4 (h); Mass. R. Prof. C. 1.15 (b) (2) (ii) (return of any funds in dispute to IOLTA account); rule 1.4 (a) (4) (prompt compliance with reasonable requests for information); and rule 1.15 (d) (1) (providing full written accounting upon client's request).
               [8] The amount in excess of the retainer funds received from client B was covered by recently earned fees in other matters that had not yet been withdrawn from the respondent's IOLTA account.
               [9] The hearing committee found that the respondent's course of conduct violated rule 1.5 (b) (1); rule 1.15 (d) (2); rule 1.15 (b); rule 8.4 (c); and rule 8.4 (h).
          [10] The hearing committee found that this course of conduct violated rule 1.15 (d) (2); rule 1.15 (b); rule 8.4 (c); rule 8.4 (h); rule 1.4 (a) (4); rule 1.15 (d) (1); rule 1.4 (a) (3) (keeping client reasonably informed about status); and Mass. R. Prof. C. 1.3, as appearing in 471 Mass. 1318 (2015) (acting with reasonable diligence and promptness).